ACKERMAN, appellant, and ACKERMAN'S EXECUTORS, respondents.

An arrangement on the part of a father for the benefit of his son, by which the son was to occupy a farm during the father's lifetime, at an inadequate rent, the father intending to devise the same to him, and the son so expecting, and where the son had made improvements different from what an ordinary tenant would make, but which may well have been made under the expectation of such a continuous occupation and the eventual devise of the farm, without the existence of any definite and binding contract of purchase, is insufficient to set aside a different devise, and to compel a conveyance of the farm by the heirs. The intention so to devise is voluntary and without consideration.

This was an appeal from a decree made in accordance with the opinion of the Vice-Chancellor, reported *ante*, *p.* 315.

*Mr. C. H. Voorhis* and *Mr. Gilchrist*, Attorney-General, for appellant.

*Mr. M. M. Knapp*, for respondents.

The opinion of the court was delivered by
BEDLE, J.

Peter H. Ackerman, the father of Gilbert, the complainant, died June 2d, 1869, having left a will, dated December 22d, 1866, by which he bequeathed to his widow $10,000, besides some household and kitchen furniture, the same being in lieu of dower. He also empowered his executors to sell all his real estate in Saddle River township, Bergen county, and to divide the proceeds, together with the residue of his personal estate, into five equal parts, giving one share to each of his surviving children, viz.: Gilbert and three daughters, and the remaining share to the children of his deceased son, John Henry. Gilbert filed his bill to set aside the devise of the farm in question, being the homestead, on the ground that the same was in fraud of an alleged contract between himself and his father, by which the farm was to be devised

to him, or in some way to belong to him at his father's death, and also to compel the heirs to specifically perform the contract.

Gilbert reached his majority in 1855, and then married. After that he continued to live upon the farm, working it on shares, until the spring of 1857, when a different arrangement was made, which arrangement, it is claimed, was a contract by which Gilbert was eventually to become owner of the farm. It is unnecessary to repeat the alleged contract set out in the bill, as it appears in the Vice-Chancellor's opinion. The facts fail to show anything but a voluntary arrangement on the part of the father for the benefit of the son, without the mutuality or binding force of a contract for the conveyance or devise of the farm. The father and mother lived in one part of the house, the son in the other. The son cultivated the farm for his own benefit, at the very inadequate rent of $100 a year and taxes, besides allowing his father to have one-half of the chickens, and feed for his horse, which horse the son was to have some use of for the feed. The father, no doubt, intended, when this arrangement was made, and up to the death of his son, John Henry, to devise the farm to Gilbert, for he had made two or three wills to that effect. He had also provided, in the same way, for John Henry, who occupied an adjoining farm of the father, but which farm the father sold after that son's death. It is quite evident, too, that Gilbert believed the homestead would be devised to him by his father, and under such belief, he made some improvements, different from what would be expected from an ordinary tenant. The complainant's evidence chiefly consists of loose conversations had by different persons with the testator, and also of the character of the improvements made upon the farm; all of which evidence is entirely consistent with a purpose, at one time, on the part of the father, to devise the farm to Gilbert, and Gilbert's expectation that he would, and with a purpose of the father, after Gilbert's marriage, and while the father lived, to give Gilbert the benefit of the farm, at an inconsiderable rent, and, as said by the widow, for him to make all he

Ackerman *v.* Ackerman's Executors.

could from it, but which fails to show any contract for the conveyance or devise of the farm, intended to be obligatory either upon the father or son. As to the father, his purpose to give the farm to Gilbert was revocable at any time; and as to the son, he was bound only as a tenant from year to year, and could terminate the arrangement at his option, the same as any other tenant. The complainant seeks to break up an equal disposition of property among the children of a testator and their representatives, by means of an alleged verbal contract, and its performance by the complainant. The case calls for no relaxation of the well settled rules of equity; among them, the proof of the contract should be clear, and the possession and acts of the claimant referable alone to the contract. Here the fact of possession is satisfied by the proof of a tenancy for rent, and the nature of the improvements was such that they may well have been made by Gilbert for his own benefit, while expecting a continuous occupation of the farm at an inadequate rent, and its eventual devise by the father, without any definite and binding contract of purchase. As to the evidence, it establishes nothing more than a purpose or promise, that the farm should be willed to Gilbert, without any consideration on his part to make it irrevocable. The father's intention was purely voluntary.

The Vice-Chancellor properly decided that there was no contract entered into which could be enforced, and that is the clear result of the evidence.

The decree, under the state of the pleadings and the peculiar facts of the case, provides for compensation for certain improvements, and that part is unappealed from. All equities of the complainant in that respect, will probably, therefore, be protected. The decree must be affirmed, with costs.

For affirmance — The Chancellor, Beasley, C. J., Bedle, Dalrimple, Depue, Green, Lilly, Scudder, Van Syckel, Woodhull. 10.

For reversal—None.